# EXHIBIT A

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff, and all others similarly situated*

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/22/2025 5:52 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES
### UNLIMITED JURISDICTION

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE SAFE AND FAIR FOOD COMPANY LLC, a Delaware limited liability company, <br><br> Defendant. | Case No. 25STCV01790 <br><br> **CLASS ACTION COMPLAINT** <br><br> (Amount to Exceed $35,000) <br><br> **Jury Trial Demanded** |

CLASS ACTION COMPLAINT

# INTRODUCTION

1. Defendant manufactures and sells granola ("the Product"). To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Product in oversized packaging that does not reasonably inform consumers that they are mostly buying air. In short, Defendant dupes consumers into paying extra for empty space.

2. Several state and federal courts have found that cases involving materially identical claims are actionable and meritorious. *See, e.g.*, *Reyes v. Just Born, Inc.*, - F. Supp. 3d -, 2024 WL 1748629 (C.D. Cal. Apr. 8, 2024) (Vera, J.).*Coleman v. Mondelez Int'l Inc.*, Case No. 2:20-cv-08100 v (C.D. Cal. July 26, 2021); and *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020).

3. The below pictures illustrate the deceptive nature of the packaging and the substantial non-functional slack fill inside the package. In summary, actual product occupies only a fraction of the exterior space represented by the package:





**PARTIES**

4. Plaintiff is a resident of California. Within the statute of limitations period, Plaintiff purchased the Product for personal use. In making the purchase, Plaintiff relied upon the opaque packaging, including the size of the package and product label, and that was designed to encourage consumers like Plaintiff to purchase the Product. Plaintiff understood the size of the package and product label to indicate that the amount of product contained therein was commensurate with the size of the package, and would not have purchased the Product, or would not have paid a price premium for the Product, had plaintiff known that the size of the package and product label were false and misleading. Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's representations about the Product.

5. Defendant sells the product directly via its website as well as through its agents to consumers nationwide, including in California. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California.

**JURISDICTION AND VENUE**

6. As a court of general jurisdiction, this Court has jurisdiction over all claims presented to it.

7. Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of revenues from its website based upon interactions with Californians (including instances in which the website operates as a "gateway" to sales), such that the website "is the equivalent of a physical store in California." Since this case partly involves illegal representations and sales from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

8. Venue is proper in this County.

## FACTUAL BACKGROUND

9. While the amount of product inside any product packaging is material to any reasonable consumer seeking to purchase that product, over 60% of consumers report that they have been misled by food packaging and labeling.[1] The average consumer spends only 13 seconds deciding whether to make an in-store purchase;[2] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[3]

10. Defendant chose a certain size package for its Product to convey to consumers that they are receiving an amount of product commensurate with the size of the package.

11. Slack-fill is the difference between the actual capacity of a package and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

12. Defendant falsely represents the quantity of product in each of the Product's opaque package. The size of each package leads reasonable consumers to believe they are purchasing a package full of product when, in reality, consumers are actually receiving significantly less than what is represented by the size of the package.

13. Even if consumers had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity product

---

[1] https://www.shorr.com/resources/blog/2020-food-packaging-consumer-behavior-report/#:~:text=In%20fact%2C%2066%25%20of%20respondents,and%20food%20packaging%20moving%20forward (last visited August 2024).

[2] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/ (last visited February 2024).

[3] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

meaningfully different from the size of the package. Low income consumers, like Plaintiff, are most likely to be misled by slack fill misrepresentations.[4]

14.  Prior to the point of sale, the Product's packaging does not allow for confirmation of the contents of the Product. The Product's opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" or otherwise inspect the package before opening it, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the package.

15.  The other information that Defendant provides about the quantity of product on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the package itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line.

16.  Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of product contained in the Products' packages that would be different from their expectation that the quantity of product is commensurate with the size of the package.

17.  Plaintiff would not have purchased the Product had plaintiff known that the Product contained slack-fill that serves no functional or lawful purpose, and would have consumed the entirety of the contents if the package was filled to plaintiff's expectations.

**None of the Slack-Fill Statutory Exceptions Apply to the Product**

18.  Under applicable state law, any opaque food package is considered to be filled as to be misleading if it contains nonfunctional slack-fill. Nonfunctional slack-fill is empty space within packaging that is filled to less than its capacity for reasons other than provided for in the enumerated slack fill exceptions.

---

[4]  https://www.canr.msu.edu/news/americans-pay-attention-to-food-labels-but-are-confused-by-what-information-matters (last accessed August 2024).

19. The slack-fill in the Product's packages does not protect the contents of the packages. In fact, empty space does not protect the Product.

20. The machines used to package the Products would not be affected if there was more product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

21. Because the packages are filled to less than half of their capacity, Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of product actually in the package, consistent with the law.

22. The slack-fill present in the Product's packages is not a result of the product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

23. The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function were "inherent to the nature of the food and [] clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Defendant did not communicate a specific function to consumers, making this provision inapplicable.

24. The Product's packaging is not reusable or of any significant value to the Product independent of its function to hold the product. The packages are intended to be discarded immediately after the product is used.

25. The slack-fill present in the packages does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

26. Defendant can easily increase the quantity of product in each package (or, alternatively, decrease the size of the packages) significantly.

27. Because none of the safe harbor provisions apply to the Product's packaging, the packages contain nonfunctional slack-fill and are, therefore, misleading as a matter of law.

28. Defendant's false, deceptive, and misleading label statements are unlawful under state consumer protection and packaging laws.

29. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Product's non-functional slack-fill.

30. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:
   a. Lost money;
   b. Wasting Plaintiff's time; and
   c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling

## CLASS ALLEGATIONS

31. Plaintiff brings this action on behalf of herself and all others similarly situated, as members of the proposed class (the "Class"), defined as follows:
> All persons within the United States who purchased the Products within four years prior to the filing of the original complaint through to the date of class certification

32. Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of the proposed California sub-class (the "Sub-Class"), defined as follows:
> All persons within California who purchased the Products within four years prior to the filing of the original complaint through to the date of class certification.

33. Defendant, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believe the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

34. The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

35. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

36. There are questions of law and fact common to the Class and Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

    a. Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by slack filling the products;
    b. Whether the Class and Sub-Class members were informed that the Products were slack filled;
    c. Whether the Products were slack filled;
    d. Whether Defendant's conduct was unfair and deceptive;
    e. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;
    f. Whether the slack fill in the Products is a material fact;
    g. Whether there should be a tolling of the statute of limitations; and
    h. Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

37. As a resident of the United States and the State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

38. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

39. Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

40. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of

numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

41. The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

42. Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

43. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**COMMON LAW FRAUD**
**On behalf of the Class and Sub-Class**

44. The elements of cause of action for California common law fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *See Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

45. Each element of the cause of action for fraud is present here, as shown by the following "Who, What, When, Where, and Why" summary:

    a. **Who**: The false representations were made by the Defendant and the individuals employed by Defendant who make packaging and labeling decisions.

b. **What**: The false representation was the representation that the package was full of product, and the specific concealment was that the package was over half empty.

c. **When**: The misrepresentation has been made continuously through the statute of limitations period, as it is made each time a package is sold – including when Plaintiff purchased the product in the six months prior to filing this Complaint.

d. **Where**: The misrepresentation was made on Defendant's website, marketing materials, and the packaging of the product.

e. **Why**: Defendant made the misrepresentation to induce consumers to purchase the product, to cause them to pay more for the product, and to take market share and profits from its competitors.

46. **Knowledge**: Defendant knows that the packaging is more than half empty, knows that consumers will purchase the product based upon the belief that it is full, and knows that it is deceiving consumers.

47. **Intent to defraud**: Defendant intends for consumers to purchase the product under the mistaken belief that the package is full so that Defendant can capture sales it would not have otherwise received and can increase profits.

48. **Justifiable reliance**: Plaintiff's reliance on the size of the package was reasonable, as consumers reasonably expect that a package will be filled commensurate with its size.

49. **Resulting damage**: Plaintiff was damaged by paying more for a product than Plaintiff would have paid and receiving less product than Plaintiff expected to receive. To be clear, Plaintiff changed position in reliance upon the fraud (by purchasing the product) and was damaged by that change of position (by receiving less than Plaintiff paid for and reasonably expected to receive).

### SECOND CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### CALIFORNIA CIVIL CODE § 1750, *et seq.*
### On behalf of the Class and Sub-Class

50. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

51. The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Product as compliant with 21 C.F.R § 100.100 and the Sherman Law; (2) representing the Product has characteristics and quantities that it does not have; (3) advertising and packaging the Product with intent not to sell it as advertised and packaged; and (4) representing that the Product has been supplied in accordance with a previous representation as to the quantity of product contained within each package, when it has not.

52. Defendant deceived Plaintiff by representing that the Product's packaging, which includes significant nonfunctional slack-fill, actually conforms to federal and California slack-fill regulations and statutes including the Sherman Law and 21 C.F.R. § 100.100.

53. Defendant packaged the Product in packages that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and all consumers.

54. Defendant deceived Plaintiff by misrepresenting the Product as having characteristics and quantities that it does not have, e.g., that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and depriving Plaintiff of rights and money.

55. Defendant knew that the Product's packaging was misleading and deceptive.

56. Defendant's packaging of the Product was a material factor in Plaintiff's decisions to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff reasonably believed that Plaintiff would receive more product than actually received. Had Plaintiff known the truth of the matter, Plaintiff would have not have purchased the Product.

57. Plaintiff has suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for product never received.

58. More than 30 days prior to filing this Complaint, Plaintiff notified Defendant of the particular alleged violations of Section 1770 and demanded that Defendant correct, repair, replace, or otherwise rectify the violation. Defendant has not fully complied with Plaintiff's request.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF UNFAIR BUSINESS PRACTICES ACT
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)
### On behalf of the Class and Sub-Class

59. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 43.

60. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

61. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

62. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

63. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them slack filled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class and Sub-Class.

64. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products contained more than they actually did in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms contained less than consumers were led to believe, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving consumer products. Thus, the injury suffered by Plaintiff and the members of the Class and Sub-Class is not outweighed by any countervailing benefits to consumers.

65. Finally, the injury suffered by Plaintiff and members of the Class and California Sub-Class is not an injury that these consumers could reasonably have avoided. After Defendant, slack filled the Class Products the Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and Class and Sub-Class members that the Class Products are slack filled and are not as advertised as a result. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase the products. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

66. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### **FRAUDULENT**

67. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

68. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

69. Here, not only were Plaintiff and the Class and Sub-Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products at a price premium even though the Products are slack filled. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

70. As explained above, Defendant deceived Plaintiff and other Class Members by slack filled the Products.

71. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

72. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

73. As explained above, Defendant deceived Plaintiff and other Class Members by slack filled the Products.

74. Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

75. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

76. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class and Sub-Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class and Sub-Class Members seek an order requiring Defendant to immediately cease

such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING ACT**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**
**On behalf of the Class and the Sub-Class**

77. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 43.

78. Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

79. Defendant misled consumers by misrepresenting the quantity of the Class Products, namely, Defendant slack filled the Products in order to solicit transactions from Plaintiff and the Class and Sub-Class.

80. Specifically, Defendant slack filled the Products.

81. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class and Sub-Class Members.

82. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendant's fraudulent representations regarding the Products, namely that they did not know the Products were slack filled. In reasonable reliance on Defendant's omissions of material fact and false advertisements, Plaintiff and other Class and Sub-Class Members purchased the Products. In turn Plaintiff and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

83. Plaintiff alleges that these false and misleading actions made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

84. Defendant knew that the Class Products were slack filled, yet represented the Products in packaging that made the Products appear to contain more content than they actually did.

85. Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that were not as advertised.

86. The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class and Sub-Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## MISCELLANEOUS

87. Plaintiff and Classes Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the Class and Sub-Class, requests the following relief:

(a) An order certifying the Class and Sub-Class and appointing Plaintiff as Representative of the Class and Sub-Class;

(b) An order certifying the undersigned counsel as Class and Sub-Class Counsel;

(c) An order requiring Defendant to engage in corrective advertising regarding

the conduct discussed above;

(d) Actual damages suffered by Plaintiff and Class and Sub-Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class and Sub-Class Members from the sale of misbranded Class Products during the relevant class period;

(e) Punitive damages, as allowable, in an amount determined by the Court or jury;

(f) Any and all statutory enhanced damages;

(g) All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(h) Pre- and post-judgment interest; and

(i) All other relief, general or special, legal and equitable, to which Plaintiff and Class and Sub-Class Members may be justly entitled as deemed by the Court.

Dated: January 22, 2025

Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, PC

By: _____
TODD M. FRIEDMAN, Esq.
Attorney for Plaintiff